v. Scott J. Turyna, Defendant Appellant. Arguing for the appellant, Darren E. Miller. Arguing for the appellee, Ivan O. Taylor Jr. Good morning. Are both parties ready to proceed?     Thank you. Thank you. Thank you. Thank you. Thank you. Very well. Mr. Miller, you may proceed. Thank you. Good morning, Your Honors. My name is Darren Miller, and I'm with the Office of the State Appellate Defender. And I represent the Defendant Appellant Scott Turyna. After a jury trial, Mr. Turyna was found guilty of aggravated discharge of a firearm, which is a Class I felony, reckless discharge of a firearm, and aggravated domestic battery. He was found not guilty of attempted murder. For the aggravated discharge of a firearm, he was sentenced to 12 years in prison. And that was to run consecutive with a five-year term of imprisonment for aggravated domestic battery. The lower court determined that the sentences were required to be consecutive to each other under the consecutive sentencing statute. And that's one of the issues that we raised on appeal, that that decision was incorrect. Only two issues are raised on appeal, and they're both sentencing issues. One is whether the court was required to order the sentences to be served consecutive. And the second issue is whether the sentences were excessive. And in part, the court relied on improper factors in aggravation. I just plan today on only discussing the consecutive sentence. Counsel, let me ask you this. The trial court sentenced the defendant to consecutive sentences under Section 5-8-4, believing that it was mandatory. Do you agree that if this court were to rule that it is not mandatory and remand this case for resentencing, it simply then would become a discretionary matter where the court could again sentence the defendant to consecutive sentences? I would disagree with that, Your Honor. I mean, in Whitney and in this court's decision in Durham, the second one, the court just simply vacated the consecutive sentences in order to run concurrent. And here, I don't really know what the point of remand would be because... Counsel, don't you ask in your prayer for relief that we remand it for resentencing? Yes. But that was for assuming that this court finds the sentences excessive. Mr. Miller, let me interject a question. If we were to find the consecutive sentences were not mandatory, why would we take it upon ourselves to decide and preclude the trial court from addressing the issue of whether discretionary consecutive sentences should be imposed? Why would we take that course of action? I mean, Your Honor, certainly I have the right to remand it. That's up to Your Honor's. But my position is that there would be no point because the discretionary consecutive sentences, the court would have to find the defendant a danger of committing future crimes. And the court itself found that the defendant led a law-abiding life for a substantial period of time. Also found that he was likely to comply with probation if it had deemed probation appropriate, which it didn't. Nevertheless, the court found that the defendant was likely to comply with probation. And also the PSI shows that the defendant is a minimum risk of reoffending and he's a senior citizen. It just doesn't seem to make sense to me to remand it. But that's obviously up to Your Honor's. Was Mr. Miller, was there any indication that the trial court found that the consecutive sentences were that he had to impose the consecutive sentences and if he had his druthers, he would have done otherwise? No. No, Your Honor. He strictly just found that the judge believed consecutive sentences were mandatory. There's no indication. I don't believe there's any indication that discretionary would have been imposed. And obviously your overarching argument, Mr. Miller, is that consecutive sentences are not mandatory under the facts of this case, correct? Correct. So tell us why what authority supports that position? Sure. When you look at the statute, this is what was addressed in the Whitney decision. And the old statute addressed in Whitney has the identical language as the current statute for the pertinent language which is consecutive sentences should only be imposed if one of the offenses for which the defendant was convicted was a class X or class X conflicted severe bodily injury. That language is identical. But the triggering offense changed. A triggering offense was added, correct? Right, yeah. They added first degree murder and that seems to be what a lot of these other cases had a problem with. Otherwise you acknowledge language is the same, right? Yes, correct. And so Whitney found that that language was not clear as the state argued in its brief but is ambiguous subject to two different interpretations. And because it's ambiguous, it's to be construed in favor of the defendant. And so the Supreme Court in Whitney held that the severe bodily injury has to come from either the class one or the class X felony at that time and now murder has been added to that. But it has to come from the class one or class X triggering offense, not a non-triggering offense. And... Aggravated discharge would qualify as a triggering offense, correct? Yes, but in this case there was the severe bodily injury was in the non-triggering offense. It was in the aggravated domestic battery which occurred in the house and the aggravated discharge of a firearm, the triggering offense, there was no injury at all. I think you're correct. The indictment itself would indicate that it was the aggravated battery that was the triggering offense. However, inevitably and inexorably we're going to probably get into deciding the issue was of what constitutes the commission of the triggering of felony and I think the state is in a different position to argue. Sure. But again, if you look at even Whitney, I believe in that case there were... There was a shooting at a car and when one victim was hit and killed and the other victim was not struck and they held that even though it was a shooting at the car, but essentially a simultaneous shooting at the car, that the aggravated discharge was not... The other injury occurred during the murder. Mr. Miller, let me ask you this. As you know, subsequent to Whitney, there were some First District cases that interpreted the phrase during the commission. In those cases, Sample was one of them, Richard's another one, I think you are aware of those cases, essentially how that equate during the commission with being essentially simultaneously with the triggering felony. Now, do you agree with those or disagree with those cases? I mean, my first point would be that I believe those are improperly decided. During the commission of felonies, clear enough, the First District actually made it more difficult to say that... to change that standard. And there was no reason and they actually expanded the standard but instead of during the commission, they seem to be saying, well, somewhere around the commission. Well, around the commission of the crime is not during the commission. My belief is that the courts are interpreting that way to avoid the unjust result of murder not being a triggering offense back then, but that's changed under the new law. At any rate, there is no reason to apply that. But even if you did, our position is that we would still prevail that this crime was inside a house. The injury occurred inside the house. The shooting was outside the house. When the defendant's wife left the house, she ran. The defendant didn't run after her. He wasn't shooting at her as she was fleeing or anything like that. In fact, the testimony was that Mr. Torino walked out of the house. They had a conversation outside. At that point, there were neighbors outside. And I believe the testimony was that he was calm at that point. He was not brandishing a firearm, although he's armed. He wasn't showing it. And then shots were eventually fired when the neighbor and his wife walked away. So that's totally not connected in the same way that those sample Thompson-Harris cases were connected. In essence, you're arguing these offenses were separated by time and place. Yes. Okay. How do you respond to the state's argument that the whole incident was part of an ongoing physical violence incident turning into ballistic violence, I believe was the phrase they used? How do you respond to that, that this was one continuous event that was domestic violence turning into ballistic violence? How do you respond to that? If you even look at Whitney, I mean, if you apply that type of rationale and that logic, the result of Whitney would have been different. Whitney and I believe in Durham, too. The shots were fired at around the same time, and they could say it was all part of one incident. In fact, under the old statute, it had to be in a single course of conduct. So that is not the way that it should be looked at under Whitney. And I think some of the problem here is that it's kind of a slippery slope away from the Whitney standard into some other standard that Whitney, our Supreme Court, never set. All right. I understand the argument, but let me ask you a pointed question. Since the legislature amended the statute after the First District cases were decided and they articulated the essentially simultaneous standard, should we presume that the legislature acquiesced in or approved? No. I mean, the legislature left the language identical in the way our Supreme Court has interpreted it. I don't believe that the legislature is expected to know every appellate court district decision when other districts may disagree with it. Had the legislature wanted to say that the severe bodily injury need not come from the triggering offense, it could have just written that into the statute. Well, I think it's clear it does have to come from the triggering offense. I don't know that anybody's challenging that. It's whether or not in the course of, in the commission of. So we're going to be called upon to decide whether this was just one simultaneously continuing physical violence, turning into ballistic violence, or whether or not these acts were essentially separated from each other, that they were not a continuing course of conduct. Correct. And I would say that the legislature, by not changing the statute, that is not an indication that it agreed with the appellate court's interpretation of Whitney. What else can you tell us as to why this would not be considered a continuous course of conduct? One continuous event. Well, I mean, the battery occurred inside the residence. The shooting occurred outside the residence. Suzette ran outside. No shots were fired in the house, or as Suzette fled. And again, Mr. Sperling, the neighbor, testified that the defendant walked outside. He wasn't running. He was calm, by all accounts at that point, and was not brandishing a firearm. I think that's enough to distinguish it from a sample, Thompson and Harris, where the severe injury occurred essentially simultaneous with the trigger and offense. I know that there are different purposes for different parts of a body of law, in the criminal code in this case, but what's essentially the difference between essentially simultaneous and one act, one crime? I'm not sure. I don't I guess I'd say that I don't know that, I don't believe that under the standards set by the Supreme Court that that matters. In other words, that the Supreme Court made it simple. It has to occur during the commission of the triggering offense. Now, I guess you could argue what's during the commission and what isn't. But by this essentially simultaneous two language, that just, in my opinion, expands during the commission to something beyond during the commission, something outside of the commission, something around the commission. That's why I believe those cases are improperly decided. Mr. Miller, interpreting the phrase during the commission, what other useful standard could you articulate? What did the Supreme Court mean when they say during the commission? First District says during the commission encompasses essentially simultaneous acts. What would be your suggestion as to what the standard should be? I don't know if I have a set standard. I don't know that there ever would be a set standard. I think it would be fact specific. Let's say, for example, here the defendant battered his wife inside the house, and then she ran outside the house, and as she was running, he was firing shots at her. That would be I think arguably during the commission of the domestic battering. It's kind of in hot pursuit. It's right there. Whereas here, it's separate in time. There was a break in time. It was outside. He wasn't in hot pursuit. When the domestic battery was committed, Mr. Miller, the defendant, as I read the record, was not brandishing the gun at that point, was he? During the domestic battery? No. That's another point that would favor us. The shooting and the domestic battery are just two yeah, they're connected because it's the same victim and it's around the same time, a few minutes later, whatever, but it's not during the commission of the domestic battery or during the commission, I'm sorry, of the aggravated discharge where the severe injury occurred. Your time is up. I do have a question. You state in your brief that the trial court statement on not tolerating violence in this courtroom manifests as an intent to sentence one to the maximum. But here, the defendant faced an aggregate sentence of 22 years and he was sentenced to an aggregate of 17, as you state in your brief. This cannot be said to be trial courts arbitrarily denying  allowable sentence, can it? I don't, I hope I didn't write that, Your Honor. If I did, what I meant was that by saying it won't tolerate violence in the courtroom, it's essentially setting the sentencing policy that will never impose the minimum sentence, not that it will impose the maximum. So if I wrote that wrong, I apologize. That was an error. Isn't the statement, violence is not tolerated in the courtroom mere hypocrisy? I mean, violence isn't tolerated anywhere, correct? Sure. But why say that? I mean, what's, I would assume that when a judge speaks, there's a purpose behind it. And when you're imposing a sentence that's, I believe, three times the minimum for the aggravated discharge and you're also saying that violence is unacceptable in your courtroom, I think that that's an indication that that plays into it. Do either justice have any additional questions? No, thank you. I do not at this time. Thank you. Mr. Miller, I want to thank you. At the end of the Appleese argument, you will have an opportunity for a rebuttal. Thank you. At this time, Mr. Taylor, you may begin your argument. Thank you, Your Honor. Good morning, Your Counsel. Good morning, Your Honors. My name is Ivan O. Taylor, Jr. I argue on behalf of the Office of State Attorneys and Appellate Prosecutors, on behalf of the people in this matter. The trial court properly follows Section 584 when it's sentence defended to the mandatory consecutive terms of incarceration for aggravated domestic battery and aggravated discharge of a firearm, for the following two reasons. First, the current version of Section 584 is clear and unambiguous. It states that when one of the offenses for which a defendant was convicted is either first-degree murder, a Class X or a Class I felony, and that defendant also inflicts a severe bodily injury, that will mandate consecutive sentencing. That is what occurred here. The victim, the defendant's ex-wife, was severely battered by the defendant and during the course of that battery, as she tried to flee in order to save herself, the defendant then shot his gun at her, which aggravated discharge of a firearm is a Class I felony. Mr. Taylor, you would acknowledge that the triggering offense here is the aggravated domestic battery, correct? The aggravated domestic battery was what caused the severe bodily injury. That's the triggering offense, correct? I believe when the courts use the term triggering offense, that is referenced to either the Class X or Class I felony. Alright, so the aggravated domestic discharge would be the triggering offense, correct? Yes, that would be the triggering offense. The Class I felony would be considered a triggering offense, and the aggravated domestic battery is the severe bodily injury. And your argument would be these were one consecutive series of interrelated events, correct? Yes, that's part of our second argument, Your Honor, that if this court were to follow, were to consider that Whitney is still accurate for this current version of Section 584, then it should follow the reasoning set by the First District and that during the commission of the offense means essentially simultaneously and that for this instance, in this case, that this event was essentially simultaneous. Well, let's break that down for a second, if we could. When the domestic battery was committed, that was inside the house, as Mr. Miller suggests, correct? Yes, Your Honor. The defendant was not brandishing a gun when he committed the domestic battery, was he? I don't believe the records say he had his gun when he committed the domestic battery. And according to the record, that offense was completed inside the house, correct? The victim was able to escape outside. The victim of the domestic battery was committed inside the house, correct? Correct. Then they go outside and what took place outside? There was a neighbor fortunately intervened at some point, correct? Yes, the victim was able to escape outside and ran into two neighbors, which were able to offer some modicum of comfort. However, the defendant was able to follow her with his gun in order to continue to terrorize his victim. Now, when the defendant arrived outside, he was not firing the weapon, was he? Not immediately, sir. No. Okay. So what happened in between him going outside and then I do not recall the exact conversation that was held between the defendant and the victim. But essentially, I believe the defendant was trying to get the victim to come back into the house to get the victim back into the house. Obviously, the victim refused to do so. And then he fired the shot? Yes, Your Honor. So then how do you respond to Mr. Miller's argument that one offense was completed inside the house where the defendant was not armed. The other offense was then committed outside the house while there were some intervening events going on. How do you respond to that saying this was one essentially simultaneous, continuous offense? Well, under our second argument that Whitney is still applicable, if the victim was not able to escape outside, she would still be harmed inside the house. The reason why this is still one large continuous event is because the defendant did not leave her alone. The defendant pursued her outside, tried to drag her back into the house where he just finished harming her severely. And when she refused, he shot at her. And not only at her, but also innocent bystanders who wished to assist this poor badly beaten woman. So that is why it's one big event. While she was able to try to escape the harm being done to her, she couldn't do so because the defendant's own actions of pursuing her. However, Your Honor, I would like to note that there is actually two differences between the current version of Section 504 and the original version of Section 504 as interpreted by Whitney. Not only did the General Assembly add first-degree murder as a term of defense, it also removed the single course of conduct language. That's why our initial argument was that in this current version of Section 504, it is not required. Single course of conduct is not necessarily required. That the current language of the statute is clear and unambiguous. That as long as there is severe bodily injury to the victim and that the defendant also committed one of these three types of offenses, first-degree murder, class X felony, or class I felony, that will trigger the mandatory sentencing. Mr. Taylor, didn't Whitney hold that consecutive sentences is only mandated if the severe bodily injury occurred as a result of the triggering offense? I believe the language used by Whitney was during the commission of the triggering offense. And Whitney is still good law, correct? It has never been overturned. That is correct. What we are arguing is that because there has been a change in the statute amendment by the General Assembly, while Whitney is good law for the 1994 version of the statute, it doesn't stand to reason that that same decision should also be applied to the current version of the statute. Let me follow up to what Justice Hudson asked you because you would agree that the legislators never amended the sentencing statute to reflect that a mandatory provision of the statute applied even if the bodily harm was not connected to the triggering offense. They never made that amendment, did they? Well, Your Honors, my response to that is when this court decided the original Durham, it found that the statute was not ambiguous. It was unambiguous in that as long as I'm sorry, Your Honors. In original Durham, this court determined that the language of the statute was unambiguous and that the triggering offense of class one felony did not need to result in the severe bodily injury. It was only when Whitney was decided that this court's original decision was vacated and then the Durham two was decided. So it stands to reason that when Whitney was focused on first degree murder, which seems to be the issue because at the time, first degree murder was not considered a class X or class one felony, and that was what the issue, and that's what caused the severe bodily injury in that particular case. When the, it seems when Judge Hudson made the change, it went to expand, it went to expand upon what is allowed by, what discretion is allowed by the trial court when determining sentencing. So by adding first degree murder and removing single course of conduct, it determined that the rest of the language was still unambiguous and that it still, it was still how it should be, it was how it should be understood that the severe bodily injury needs to only occur. It does not necessarily have to be directly connected to those triggering offenses. Mr. Taylor, do you agree with the first district cases then that held in interpreting Whitney that the triggering offense and the other offenses had to be, was sufficient if they were done essentially simultaneously? Yes, Your Honor, as part of the people's second argument that as long as the triggering offense and the offense that causes severe bodily injury will occur essentially simultaneously, then that would allow for mandatory consecutive sentencing. So you would agree that at some point were called upon to determine whether or not these offenses at the very least were committed essentially simultaneously, correct? Yes, Your Honor. And tell us why they were committed essentially simultaneously? As for this case, why it was essentially simultaneous? Yes. Because it was a continuous course of action that the defendant took against this victim. For those first district cases, the particular crimes were all against the same victim, like in this case. And they all occurred within a short amount of time of each other. That is what makes it essentially simultaneous. The minor fleeing by the victim doesn't disrupt that because the defendant not only pursued the victim, but pursued the victim with his gun. Mr. Taylor, we've been talking about this particular essentially simultaneous probably now for about 25 minutes trying to make this determination, but in fact didn't the witnesses testify that this all happened in maybe three to five seconds? That, you know, she came out, they talked, he came out, she took off. I mean, we don't have a lot of time going on here, do we? Well, that's what actually that's what makes it more likely to be essentially simultaneous, the shorter time frame. The fact that she was able, the fact that this victim was being in her home, that she fled outside, saw some safety with her neighbors, but still wished to flee despite her husband coming out with his gun and that he then proceeds to shoot at her when she refuses to return to him, that the short amount of time frame indicates that it is still essentially simultaneous. Are there any other cases out there that talk about the time between the time that the total incident took or the time between the various steps have taken? Beyond what's Excuse me, Your Honor. I do not recall any particular cases that specify the time frame, whether the time frame has been analyzed, Your Honor. All right. Thank you. Counsel, in your brief on page seven, there seems to be an effort, and I think that's what we're trying to get at regarding the time, the consent to condense the time to make the two offenses ongoing and continuous. As Justice Hudson went through it, he beat her in the house. He got up and got the gun. The victim escaped in, you say, mere seconds. Matter of a few seconds is what you write, when in fact there's no evidence of the actual time that elapsed between these two incidents, the two offenses, is there? I don't believe there's a precise testimony from either the victim or defendant about when she was able to escape the battery outside. I don't think there's any precise testimony. You believe the record supports this as being essentially simultaneous? Yes, Your Honor. Because from what was testified to, it would not make sense for the victim to stay within a home in which she had just been harmed by her husband for any length of time when there is the option to flee. That's why we're making this argument. To be fair, this is our second argument that Whitney still applies to the current version of Section 584, that this is essentially simultaneous because right when she was able to escape this aggravated battery, she runs outside and her husband was able to pursue her quickly with his gun. Whatever short amount of time she was able to spend with those two innocent neighbors, it did not disrupt the overall event. Are there any more questions, Your Honors? I have one additional. You heard me ask Mr. Miller about the trial court statement on tolerating violence. Can you tell us why this doesn't also suggest to this court as a matter of course that this court would impose a higher sentence for these kinds of offenses? Well, Your Honor, violence is generally not accepted anywhere in the society. It sounds like the trial court just made a lawyer-play statement without actually putting any real weight to it. So, for this court, it shouldn't consider that to mean anything other than a general statement. Not necessarily nothing to do with the trial court's intent to their sentencing. Excuse me, Mr. Taylor. The trial court seemed to be upset about the I mean, focused I won't say upset. Focused on the fact that Suzette had been diagnosed with cancer. She had serious stomach surgery and the defendant here seemed to take some satisfaction in jumping up and down or bouncing up and down on her stomach. That certainly would indicate that that's where the serious bodily injury occurred, wouldn't it? I believe so. As to the court taking any focus upon that in particular, within the PSI, the defendant indicates how when his wife went through the cancer and the surgery and the recovery, he just became fed up with her attitude as it fed her attitude and that's what made him decide to batter her. And to and the trial court just took as a focus as evidence of the defendant's character during his sentencing. As for that, I think, as you said, that was probably what was considered a severe bodily injury for this particular case. And at that time there was no gun involved, correct? I do not believe so, Your Honor. All right. Counsel, your time is up. I apologize for interrupting you. So did you have any concluding remarks? The people just like to conclude that the current version of Section 584 is clear and unambiguous and it does not require that this severe bodily injury be directly related to the triggering offense. And even if Whitney were to still apply to this version of the statute, under the reasoning of the First District, the crimes that occurred against the victim were essentially simultaneous, thus also allowing consecutive sentencing. And the people asked that this court affirm the defendant's sentence. Does either justice have any additional questions? No, thank you. I do not. Thank you. Nor do I. Thank you, Mr. Miller. Mr. Miller, you may proceed with your rebuttal. You are muted, Mr. Miller. Thank you. Yeah, aggravated discharge of a firearm is the Class I felony. That's the triggering offense. There was no severe bodily harm committed during the triggering offense. The severe bodily harm occurred earlier inside the house during the commission of the non-triggering offense. A Class II found the aggravated domestic battery. So I think it's clear that the severe bodily harm did not occur during the commission of the aggravated discharge of a firearm. In fact, that was committed after the injuries already occurred. And to the extent that there is a need to show the time, there was no testimony, I believe, as far as how close in time it was between when the battery occurred and when the shots were fired. Yeah, the, Mrs. Tarina ran outside, but the testimony was that later the defendant walked outside. He didn't even run to the bottom of the driveway. It's not clear how long the driveway is, how long it took him to get there. And they had a conversation out there, and the testimony was that everything appeared to be calm at that point. No testimony as to how long that conversation took, that I recall. And it's up to the court or the state to establish that these are somehow connected. And again, if you look at the essentially simultaneous two standard, that was not mentioned in Whitney. That's one court's basically version of what during the commission of the triggering offense means. But again, under either standard, whether it's during the commission, if you want to define that as essentially simultaneous two or something else, the severe bodily injury did not occur during the triggering offense of the aggravated discharge of a firearm. And if there are no other questions... Mr. Miller, I do have a question. When Suzette came out of the house, rolled under the door, however she got out, what were her first words? Do you recall? I'm sorry. I don't recall her first words, Your Honor. Did she at some point say, he's trying to kill me, or something like that? Wasn't that part of what she said to the neighbors on the street? Yeah. I believe she was calling for help. I forget the exact words, but I do recall that it was something to the effect of, he's trying to kill me. And did she mention that there might be a gun involved? I believe so. I believe after the battery occurred, there was some dispute about whether she retrieved the gun and he took it from her, or whether he went and got the gun. But yeah, there was, I believe, some reference to him being armed. Right. So that being the case, wouldn't that lend itself to what Mr. Taylor's talking about, that although the gun didn't cause any physical injury that we're aware of to her body, a gun is part of this whole process and it's, he's possessing the gun and  shot the gun. Doesn't that sort of sit right inside Mr. Taylor's argument? Again, I think it's somewhat backwards. The issue is whether the severe bodily injury occurred during the course of the triggering offense. The triggering offense here is a class one felony, and the only class one felony is aggravated discharge or fire. So the severe injury did not occur during the course of that. The state's kind of looking at it almost backwards, whether it's part of the domestic battery. The issue is whether it's part of the aggravated discharge. And again, beyond that, even if you look at it as part of the domestic battery, because the domestic battery is not the triggering offense, but even if it were, it's separated by time. Again, he walked out there, he appeared calm. There was a seemingly normal conversation for a while out there, and then when his wife walked away, that appears to be when he lost his temper again and began to fire shots. So that's not during the commission of the triggering offense, and it's not essentially simultaneous to the I'm sorry, the severe injury is not essentially simultaneous to the triggering offense of the aggravated discharge. Mr. Miller, are there any cases that give us a bright line time? What time limit that talks about essentially the same? I would assume there's nothing out there that says within 15 or 20 minutes, but is there something that talks about a shorter period of time that would make them essentially simultaneous? No, Your Honor. This is a very fact-specific type of an issue. It would vary case by case. Ultimately, I think from the point when you start talking about essentially simultaneous to, the issue is really under Whitney whether the injury, the severe injury occurred during the commission of the aggravated discharge, and that's clearly it didn't under any theory. Okay. Thank you very much. Thank you. Does any, either Judge Hudson, do you have any additional questions? I do not. Thank you. Nor do I. I want to thank you at this time, Mr. Miller. Thank you, Your Honor. The court thanks both parties for your arguments this morning. The case will be taken under advisement, and a disposition will be rendered in due course. Mr. Clerk, you may terminate these proceedings. Thank you, Counsel. Thank you, Your Honors.